UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GREG KUEBEL, on Behalf of Himself
and ALL Others Similarly Situated,

                    Plaintiff,

                                              08-CV-6020T

          v.                                  **DECISION**
                                              **and ORDER**

BLACK & DECKER (U.S.) INC.,

                    Defendant.

_____

## INTRODUCTION

Plaintiff, Greg Kuebel, ("plaintiff" and/or "Kuebel") brings this collective action for declaratory relief, injunctive relief and monetary damages on behalf of himself and all others similarly situated, alleging violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 *et seq.* ("FLSA") and violations of New York Labor Law against defendant Black & Decker (U.S.) Inc., ("Black & Decker" and/or "defendant"). Specifically, plaintiff seeks wages for the time he spent commuting from his home to his first job site of the day and from his last job site of the returning back to his home.

Defendant moves for partial summary judgment with respect to whether its policy of compensating Retail Specialists[1] for their commute time in excess of sixty miles or in excess of 60 minutes complies with the FLSA. Black & Decker argues that the Portal-to-Portal Act ("Portal Act") amendments to the FLSA bars plaintiff's claim for wages for

_____

[1]Plaintiff worked for defendant as a full-time Retail Specialist from September 2006 to June 2007. See Def.'s Statement Of Undisputed Facts ("DSOF"), 1.

commute time because the normal commute time from an employee's home to the first job site and from the last job site of the day to home is not compensable. In addition, Black & Decker argues as a matter of law that the incidental tasks that plaintiff performed in the morning or evening before or after working in his assigned Home Depot stores were not "principal activities," such that his entire commute to and from his home was compensable. Moreover, defendant contends its good faith reliance on the Department of Labor ("DOL") regulations and a DOL opinion letter[2] is a complete defense to damages under the FLSA.[3] Further, defendant argues that the applicable statute of limitations is two years instead of three years because there is no evidence that Black & Decker's compensation policy was "willful."

Plaintiff opposes defendant's motion on grounds that there are questions of material fact in dispute, and therefore, summary judgment is inappropriate. Plaintiff argues that all of his commute time should be compensable because he performed certain tasks at his home prior to and after commuting to his assigned Home Depot stores and/or storage unit. Accordingly, plaintiff contends that once he performed any work at home, all the time that followed, including commute time, was

---

[2]In support of its Motion for Partial Summary Judgment, Black & Decker also submitted a request for Judicial Notice pursuant to Rule 201 of the Federal Rules of Evidence ("Fed.R.Evid.") Black & Decker is requesting the Court take judicial notice of two DOL opinion letters including: (1) a January 29, 1999 Opinion Letter ("January 1999 opinion letter") and an April 5, 1994 Opinion Letter ("April 1994 opinion letter"). Plaintiff has not opposed the defendant's request. Accordingly, defendant's request that the Court take judicial notice of the January 1999 opinion letter and April 1994 opinion letter pursuant to Fed.R.Evid. 201 is granted.

[3]Defendant claims it acted in good faith and in reliance on the above authorities when it developed and maintained its practice of compensating employees such as plaintiff only for their commute time in excess of 60 miles or 60 minutes.

compensable. Alternatively, plaintiff's counsel has filed a Rule 56(f) request arguing that plaintiff has not had reasonable opportunity to conduct discovery on substantive issues relating to the motion for partial summary judgment. For the reasons set forth below, I grant defendant's motion for partial summary judgment, and dismiss plaintiff's claims relating to compensation of Retail Specialists for their commute time in excess of sixty miles or sixty minutes.

**BACKGROUND**

## I.   **Procedural History**

On January 10, 2008, plaintiff filed a Collective Action Complaint alleging violations of the FLSA and the New York Labor Law. <u>See</u> Docket # 1. The Complaint alleges that defendant failed and has refused to pay plaintiff as well as all other current and former Retail and Sales & Marketing Specialists,[4] straight time and overtime compensation for all hours worked. <u>See</u> <u>id.</u> In addition, plaintiff seeks wages for his commute time from his home to his first store or storage unit and from his last store or storage unit to his home at the end of the day ("Commute Time") since he did not have a designated place of work. In the alternative, plaintiff alleges that he is owed wages for his Commute Time because his workday began and ended at home where he performed tasks including synching his Personal Digital Assistant

---

[4]There appears to be no dispute that in January 2006, defendant created the Sales & Marketing Specialist position and that this position shares many of the same job duties that are required of Retail Specialists.

("PDA"), loading and unloading his car, reviewing company training and instructions and receiving and responding to e-mails and voice mails.

A notice was sent on August 26, 2008 to all former and current Retail and Sales and Marketing Specialists who were employed by Black & Decker at any time from June 1, 2005 to present permitting them to join plaintiff's FLSA action. A cut-off date of October 25, 2008 was established for people to respond to the notice. Of the 742 former and current Retail and Sales and Marketing Specialists who received the notice, 130 opted-in to join plaintiff's FLSA action.

## II.  **Factual Background**

### A.  **Duties and Responsibilities of Retail Specialists**

Black & Decker employs Retail Specialists like plaintiff[5] who are responsible for enhancing the image of Black & Decker's brands at the retail level. See DSOF, 4. In addition, they are assigned to Home Depot stores within a geographical area and are responsible for inventory management, event and brand marketing and product training within their assigned stores. See id., 5. In this case, plaintiff was assigned to six Home Depot stores, ranging in distance from 20-25 minutes to three hours from his home. See Plaintiff's Response ("Pl. Response") to DSOF, ¶6.[6] Plaintiff was also provided with a storage unit that was within one

---

[5]An opt-in plaintiff named Robert Foster ("Foster") also worked as a Retail Specialist for defendant since January 2005. See Plaintiff's Statement Of Additional Facts ("PSOF"), ¶1. Plaintiff and Foster were co-workers for a while and they shared the same supervisors and performed substantially similar duties. See id.

[6]Plaintiff's stores were located in Ithaca, NY (25-30 miles from his house); Painted Post, NY (16-18 miles from his house); Johnson City, NY (60 miles from his house); Jamestown, NY (160 miles from his house); Oneonta, NY (120 miles from his house); and Olean, NY (110 miles from his house). See DSOF, 7.

mile of his Johnson City, New York store, which he typically visited once a week on the day that he worked at the Johnson City store. See DSOF, 6. In general, plaintiff worked at only one Home Depot store per day and was compensated for any Commute Time at either the start or end of the workday that exceeded 60 minutes. See id., 8.

The principal job duties of a Retail Specialist, including plaintiff, was to make sure that Black & Decker products were properly stocked, priced and displayed within the space that he or Black & Decker negotiated in each of his six assigned Home Depot stores. See id., 9. Moreover, plaintiff provided product knowledge training sessions to store personnel and engaged in in-store sales conversations with Home Depot customers that were interested in Black & Decker's products. See id., 10. Importantly, the essential functions of plaintiff's job were to ensure that his six Home Depot stores were "fundamentally sound." See id., 11. This meant plaintiff had to make sure that: (1) the Black & Decker products in the store are priced correctly; (2) the product fact tags are accurate and properly displayed; (3) the Black & Decker products are adequately stocked; and (4) the Black & Decker products are clean, on the shelves and on display, and (5) the Black & Decker tool display is set in the pod correctly. See id., 11.

Retail Specialists did not report to a central office, instead they worked out of offices in their homes. See PSOF, ¶¶2-3. These offices were their home bases and contained everything that they would

need to conduct business including desks, chairs, filing cabinets, computers and fax machines. See id., ¶¶4-5. Defendant requires its Retail Specialists to record the time spent working at home on their time sheets so it is compensated. See DSOF, 26.[7] Plaintiff contends that Retail Specialists performed several tasks at their home offices that are vital to their work day including: reviewing and responding to company e-mails,[8] receiving directives from their managers, printing and reviewing sales reports, training on the Black & Decker website via E-learning courses,[9] assembling point-of-purchase ("POP") materials and synchronizing the company-provided PDA.[10] See PSOF, ¶13. Defendant argues that before and after completing work at his first and last job sites of the day, plaintiff performed limited activities including "synching" his PDA, "collecting [and responding to] e-mail" and printing out vital information, "organizing" the POP once a week,

---

[7]Plaintiff was expected to spend a minimum of 2.5 hours working out of his home per week. See PSOF, ¶6. Plaintiff recorded 30 minutes per day on his time sheet for work at home, even if he spent more time on these activities. See DSOF, 27. Plaintiff claims he was not allowed to report any time he worked over 40 hours per week. See PSOF, ¶7.

[8]Plaintiff claims he and Foster started their work day by monitoring e-mails that arrived overnight, which contained special priority tasks, vital product information and competitor information, weekly sales reports, quarterly sales reports, reports on trending of products, product promotions, and sales contests. See PSOF, ¶¶10-11.

[9]Kuebel was required to take e-learning courses since it would reflect on his quarterly review if he did not complete the courses and he could only participate in the e-learning courses by using his computer in his home office. See PSOF, ¶¶40-41.

[10]Defendant provided Keubel with a PDA that he used to record his entry and exit times at each Home Depot store he worked at and to complete "task lists." See DSOF, 12. While defendant expects Retail Specialists to synchronize their PDAs about six times per week, Keubel testified that he synchronized his PDA twice a day at home to electronically communicate his completed task lists and store times with his managers. See id., 13. Computer records reflect that the amount of time plaintiff spent synchronizing his PDA typically took between 10 and 30 seconds. See id., 15.

making handmade signs, if necessary, loading materials into his car and unloading them at night. See DSOF, 21.

In addition, defendant contends there was no requirement that plaintiff synch his PDA, or check his e-mail or voice mail at any particular time of day--Keubel could choose to do so at times that were convenient to him. See id., 22. For instance, defendant's computer records reflect that plaintiff did not always synch his PDA immediately after returning home but rather he would do so very late at night. See id., 23. Moreover, Keubel was not required to make handmade signs or organize his POP at home since he also had the ability to perform those tasks at the Home Depot stores. See id., 24. There is no dispute and plaintiff testified that all of the activities combined took plaintiff a total of 15-30 minutes in the morning and 15-30 minutes in the evening.

In response to defendant's explanation, plaintiff states that although he could arguably synch his PDA and listen to his voice mail at any particular time of the day, he could only properly synch his PDA from his home office, and due to service outages, could only reliably check his voice mail from his home office. See Pl. Response, ¶22; see also PSOF, ¶¶37-39.[11] Plaintiff further contends that he would generally synch his PDA upon his return home, however, oftentimes he did not return home until late in the evening because of his commute time. See id., ¶23. In addition, plaintiff claims he made handmade signs for Home

_____

[11] According to plaintiff, his supervisor Scott DaVolt left long messages throughout the day with pertinent business information. See id., ¶37. In addition, plaintiff would often have 5-6 new voice mail messages to listen and respond to in the mornings. See id. In this regard, plaintiff would diligently check his voice mail massages from home so he could receive all directives and important business information to write down. See id., ¶39.

Depot at his home office when they required a lot of detail. See id., ¶24. Keubel asserts that his supervisor required him to put specific product details and specifications on signs and if he did not perform the task from his home office, he would not have the important information available to him. See id.

As a Retail Specialist, defendant contends that plaintiff was a field employee and spent almost all of his workday at Home Depot stores, where he was typically required to bring three things: a plastic bin, a tool bag and a binder. See DSOF, 16, 17. According to plaintiff, he spent a large part of his workday traveling to and from stores and working in his home office. See Pl. Response, ¶16; see also PSOF, ¶12. Defendant claims the items plaintiff had with him, took up the space of no more than two banker's boxes. See DSOF, 17. Plaintiff argues that he was also required to bring POP materials that consisted of several large boxes of material that were designed to fit into end caps or other large cardboard displays at the store. See Pl. Response, ¶17; see also PSOF, ¶46. Moreover, defendant contends the loading and unloading the plastic bin, tool bag and binder took plaintiff no more than two to three minutes. See DSOF, 18. There were some occasions when plaintiff was sent larger promotional items including cardboard cutout displays that plaintiff reports took as long as ten minutes to load or unload from his car. See id., 19. While defendant does not require that plaintiff unload and reload his plastic bin, tool bag and binder from his car each day, he sometimes did when he needed to use his car for

personal reasons or when he had to do work fo his other employers. <u>See</u> <u>id.</u>, 20.[12]

Plaintiff worked for defendant as a full-time Retail Specialist from September 2006 to June 2007. <u>See</u> <u>id.</u>, 1. Defendant claims that plaintiff was terminated for poor performance and falsification of company records less than a year into his employment with Black & Decker. <u>See</u> <u>id.</u>, 28. Plaintiff argues he was terminated in retaliation for his complaints over failure to pay overtime compensation and because he then limited himself to working only 40 hours per week. <u>See</u> Pl. Response, ¶28.

## B.   Defendant's Review of DOL Regulations and Opinion Letters

According to defendant, in July 2004, the Human Resources Manager for North American Commercial Sales, Deborah Jonas ("Ms. Jonas") consulted with counsel for Black & Decker, Suzzanne Decker and Kathleen Pontone of Miles & Stockbridge ("Labor Counsel") for legal advice as to the proper compensation practice for field employees' Commute Time. <u>See</u> DSOF, 29. Labor Counsel advised Ms. Jonas that a practice that compensated employees for Commute Time to their first job site in excess of 60 miles and from their last job site to home in excess of 60 miles would be in compliance with applicable state and federal wage and hour laws. <u>See</u> <u>id.</u>, 30. Defendant states that its Labor Counsel reviewed and relied upon the FLSA and its implementing regulations and DOL opinion letters, including the January 1999 opinion letter in

---

[12]Plaintiff was employed by three other companies during the time he was working for Black & Decker. He did field merchandising for 4-12 hours per week for Mosaic , 1-4 hours per week for Campaigners and occasional merchandising as an independent contractor for the Pat Henry Company. <u>See</u> <u>id.,</u> 2-3.

providing advice to Black & Decker. See id., 31.[13] Accordingly, Black & Decker maintains that it compensated its Retail Specialists in a manner that was based on the legal advise obtained from its Labor Counsel.[14]

Defendant states that it has implemented "Time Keeping Guidelines for Retail Specialists and Sales and Marketing Specialists" ("Time Keeping Guidelines") that instructed employees to record all of their travel time (1) to their first job location (generally a store or storage unit) in excess of 60 miles; (2) from their first job location to other job location during their shifts; and (3) from their final job location (generally a store or storage unit) to their home or other final destination in excess of 60 miles. See id., 33.[15] Some managers, including plaintiff's manager instructed the Retail Specialists they managed to record their commute times to their first job sites in excess of 60 minutes, rather than 60 miles, and to record their commute times from their last job site of the work day in the same manner. See id., 35. Plaintiff testified that he understood that he was expected to record his Commute Time to his first job location to the extent it exceeded 60 minutes, and to record his Commute Time from his last job

_____

[13]In advising defendant, Labor Counsel relied on particular portions of the January 1999 opinion letter that held that a policy that compensated employees for commute time in excess of one hour to and from the first and last job sites of the day was acceptable and that completing certain duties at home did not make the home "a job site for purposes of counting work or travel" or "affect the compensability of travel time." See id., 32.

[14]Plaintiff claims that it lacks knowledge or information as to the facts asserted in this entire paragraph. See Pl. Response, ¶¶29-34.

[15]The Time Keeping Guidelines have been in effect since 2004. See id., 34.

location to the extent it exceeded 60 minutes. <u>See</u> <u>id.</u>, 36. Plaintiff tracked his time sheets accordingly. <u>See</u> <u>id.</u>[16]

## DISCUSSION

**I.     Standard of Review**

**A.     Summary Judgment Standard**

A motion for summary judgment shall be granted if the pleadings demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." <u>See</u> Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted). The moving party initially bears the burden of demonstrating that no genuine issues of material fact remain. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once this showing is made, the nonmoving party may not rely solely on "[c]onclusory allegations, conjecture, and speculation," <u>Niagara Mohawk Power Corp. v. Jones Chem. Inc.</u>, 315 F.3d 171, 175 (2d Cir.2003) (internal citations and quotation marks omitted), but must present specific evidence in support of its contention that there is a genuine dispute as to the material facts. <u>See</u> Fed.R.Civ.P. 56(e). The Court resolves all ambiguities and draws

---

[16]Plaintiff was informed what stores he was assigned to and received as well as was given an explanation on defendant's Mileage Reimbursement Policy and Time Keeping Guidelines. <u>See</u> id., 37.

all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 127 S.Ct. 1769, 1776 (2007) (citing Fed.R.Civ.P. 56(c)).

## B. Plaintiff's Rule 56(f) Request

As an alternative position, plaintiff seeks a continuance of the defendant's motion for partial summary judgment to conduct discovery on the issue of good faith compliance and defendant's good will pursuant to Fed.R.Civ.P. 56(f). See Plaintiff's Rule 56(f) Affidavit, ¶5 ("Pl. 56(f) Aff."). Rule 56(f) provides a vehicle for parties opposing a motion for summary judgment to obtain further discovery before the court rules on the motion.[17] The Second Circuit "has established a four-part test for the sufficiency of an affidavit submitted pursuant to Rule 56(f). The affidavit must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." See Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir.1994) citing Hudson River Sloop Clearwater, Inc. v. Dep't of Navy, 891 F.2d 414, 422 (2d Cir.1989); see also Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 926 (2d Cir.1985) (establishing the four-part test); Rebrovich v. County of Erie, 544 F.Supp.2d 159, 167 (W.D.N.Y.2008).

---

[17]Rule 56(f) states in full: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

However, even if the affidavit purports to satisfy all of these conditions, "Rule 56(f) is not a shield against all summary judgment motions....[A] bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f)." See Paddington Partners, 34 F.3d at 1138 (internal citations and quotation marks omitted). If a court finds that a request for discovery is based on speculation as to what might be discovered, the court can deny the request, even if properly and timely made. See id.; Gray v. Town of Darien, 927 F.2d 69, 74 (2d Cir.1991) ("In a summary judgment context, an 'opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment] motion'") quoting Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 (2d Cir.1981); Capital Imaging Assocs. v. Mohawk Valley Med. Assocs., 725 F.Supp. 669, 680 (N.D.N.Y.1989) (citations omitted) (while "Rule 56(f) discovery is specifically designed to enable a plaintiff to fill material evidentiary gaps in its case...it does not permit a plaintiff to engage in a 'fishing expedition'"), aff'd 996 F.2d 537 (2d Cir.1993).

Here, plaintiff's Rule 56(f) affidavit is deficient for several reasons. First, plaintiff makes no attempt to show how the facts sought are reasonably expected to create a genuine issue of material fact. "Rule 56(f) is not a shield against all summary judgment motions. Litigants seeking relief under the rule must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative." See Sundsvallsbanken v. Fondmetal, Inc., 624 F.Supp. 811,

815 (S.D.N.Y.1985). Plaintiff has not made the requisite substantive showing of materiality required at this stage. Second, plaintiff has not offered a reasonable explanation for his failure to obtain discovery sooner. This is not a case where plaintiff has been "denied reasonable access to potentially favorable information." <u>See</u> <u>Robinson</u> <u>v. Transworld Airlines, Inc.</u>, 947 F.2d 40, 43 (2d Cir.1991). In this case, plaintiff had sufficient time in which to conduct discovery. In fact, at a Scheduling Conference held on March 5, 2008, counsel for defendant informed the Court and plaintiff's counsel that there was a January 1999 opinion letter relating to the payment of commute time and discussed the fact that defendant believed the opinion letter was dispositive on the Commute Time issue and that an early determination on that issue was proper. <u>See</u> Defendant's Rule 56(f) Response Affidavit, ¶4 ("Def. 56(f) Resp. Aff.")

In addition, in March 2008, plaintiff's counsel informed defense counsel that plaintiff would not appear for his deposition unless and until defendant agreed to give plaintiff all of its written policies and procedures concerning how Black & Decker paid Retail Specialists for Commute Time so that he would be prepared for his deposition. <u>See</u> <u>id.</u> ¶7. Accordingly, defendant complied with this informal discovery request and turned over the documents to plaintiff's counsel on March 23, 2008. <u>See</u> <u>id.</u> Further, earlier on March 20, 2008, plaintiff's counsel was informed orally and in writing that defendant would not stall plaintiff's discovery demands, while proceeding with its own. <u>See</u> <u>id.</u>, ¶8. However, to date plaintiff has not noticed the depositions of

any Black & Decker witnesses. See id., ¶9. Defendant took plaintiff's deposition on May 23, 2008 and followed up by serving on plaintiff a second set of Requests for Production of Documents and Interrogatories on June 25, 2008. See id., ¶10. Plaintiff also served defendant with his first Request for Production of Documents and Special Interrogatories on August 22, 2008, which defendant responded to in a timely fashion. See id., ¶11. No additional discovery has been served on defendant by plaintiff since that time.

Significantly, defense counsel states that she informed plaintiff's counsel in November 2008 that defendant would push forward with a summary judgment motion on the issue of the legality of Black & Decker's commute time policy. See id., ¶14. However, plaintiff's counsel did not mention deposing any witnesses for the defendant. See id. Moreover, once defendant filed its partial summary judgment motion, plaintiff still did not notice any depositions. See id., ¶15. Plaintiff offers no satisfactory explanation for his failure to use the discovery devices available under the Fed.R.Civ.P. to obtain the deposition of defendant's witnesses. Instead, plaintiff claims that the Magistrate Judge has not entered a Scheduling Order dealing with discovery deadlines or dispositive motion deadlines. See Pl. 56(f) Aff., ¶9. It is only after defendant filed this motion for partial summary judgment that plaintiff's attorney stated he will pursue discovery on all related issues which affect defendant's affirmative defenses concerning good faith compliance and willful conduct. See id., ¶¶10-13.

While courts generally treat Rule 56(f) motions liberally, "[r]equests for discovery in the face of motions for summary judgment put forth by parties who were dilatory in pursuing discovery are disfavored." See Paddington Partners, 34 F.3d at 1139. Given plaintiff's failure to use the discovery devices available to him, as well as his failure to explain why the information requested would raise a genuine issue of material fact sufficient to defeat summary judgment, plaintiff's request must be denied. Therefore, the court turns to the merits of Black & Decker's motion. See Powers v. McGuigan, 769 F.2d 72, 76 (2d Cir.1985) ("where the discovery sought would not meet the issue that the moving party contends contains no genuine issue of fact, it is not an abuse of discretion to decide the motion for summary judgment without granting discovery").

## II. **Commute Time**

Plaintiff contends that there is a disputed issue of fact as to when his workday begins and ends. See Pl. Br. at 11. Further, plaintiff argues that his Commute Time is compensable because the activities he performed at his home office are integral and indispensable to his job duties rendering it compensable under the FLSA. See id. Defendant however contends that it is not seeking an adjudication concerning whether or not the time plaintiff spent performing work at home is compensable. See Def. Reply Br. at 1. Rather, defendant argues that it is merely requesting that the Court make a determination whether its policy of compensating Retail Specialists for their Commute Time in excess of sixty miles or in excess of sixty minutes is in compliance with the FLSA. See id.

**A. Plaintiff's Commute Time Is Not Compensable**

The Wage and Hour Division of the DOL has promulgated federal regulations relating to travel time, which expressly state that ordinary home-to-work travel is not considered work time and is not compensable. See 29 C.F.R. §785.35; accord Kavanagh v. Grand Union Co., 192 F.3d 269, 272 (2d Cir.1999); Smith v. Aztec Well Servicing Co., 462 F.3d 1274, 1286 n. 3 (10th Cir.2006); Imada v. City of Hercules, 138 F.3d 1294, 1296 (9th Cir.1998); Vega v. Gasper, 36 F.3d 417, 424 (5th Cir.1994). An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not work time. See 29 C.F.R. §785.35; accord Kavanagh, 192 F.3d at 272; Smith, 462 F.3d at 1286 n. 3; Vega, 36 F.3d at 424.

Further, the DOL in its January 1999 opinion letter considered "whether certain travel time and other activities performed by home-based employees" who worked in the field were "hours worked" for purposes of the FLSA. See 1999 DOLWH LEXIS 9, at *1. The DOL determined that an employer's policy that paid home based employees for all but one hour of travel time from home was acceptable under 29 C.F.R. §785.35. See id. at *4. In particular, the DOL opined

> [T]ravel time would not be compensable, unless the time involved is extraordinary. For example, where [an employee's] commute to the first job site in the morning takes four hours, [the DOL] would consider the greater portion of travel time compensable under the principles described in 29 C.F.R. 785.37. That rule allows a portion of the total commute time to be considered non-compensable home-to-work travel. If the

> employer treated three of the four hours as compensable travel, [the DOL] would not question such practice.

See id. Moreover, the DOL found in the same opinion letter that it "would not take exception to a practice that treats one hour of commuting time as non-compensable home-to-work travel, and that treats all travel time in excess of that amount as hours worked." See id. at 6.[18]

As the Second Circuit found in Kavanagh, the phrase, "normal travel," is not an objective standard of how far most workers commute or are reasonably expected to commute but rather "a subjective standard, defined by what is usual within the confines of a particular employment relationship." See Kavanagh, 192 F.3d at 272; see also Imada, 138 F.3d at 1297 (travel to training locations was non-compensable because it was neither special nor unusual, but was "normal, contemplated and indeed mandated incident of [employee's] employment"); Vega, 36 F.3d at 424-25 (farm workers' travel time on bus, sometimes in excess of two hours, was not compensable where extended travel was normally required by job). Accordingly, home-to-work travel that is "'a contemplated, normal occurrence'" of the employment is viewed as "normal travel" under the regulation. See Kavanagh, 192 F.3d at 273.

In the instant case, the court concludes that, as a general matter, plaintiff's Commute Time is not compensable. At the outset, it is undisputed that plaintiff was assigned to work six Home Depot stores

---

[18]In addition, in an April 1994 opinion letter, the DOL determined that a construction employer that has the majority of its projects located at job sites that are 1 to 1½ hours from the home office, does not have to compensate its employees for the time spent traveling to those job sites from their homes. See 1994 DOLWH LEXIS 24.

ranging in distance from 20-25 minutes to three hours from his home. In addition, during his orientation, plaintiff was informed which stores he was assigned to and he received written and oral explanation of Black & Decker's Mileage Reimbursement Policy and Time Keeping Guidelines. Indeed, Kuebel's manager instructed him to record his commute times to his first job site in excess of 60 minutes, rather than 60 miles, and to record his commute time from his last job site of the work day in the same manner. In this regard, defendant's practice is in compliance with the DOL regulations, opinion letters and case law since it appropriately compensates employees for time in excess of their normal commute time. Accordingly, plaintiff's claim for unpaid wages for his Commute Time that was less than sixty minutes fails as a matter of law. Thus, plaintiff's commute time from his home to the first job location of the day and from his last job location of the day back to his home is not compensable under the FLSA. Black & Decker's motion for partial summary judgment is granted.

### B. "Indispensable and Integral" Activities

The Portal Act provides, in relevant part:

[N]o employer shall be subject to any liability or punishment under the [FLSA]...on account of the failure of such employer to pay an employee minimum wages, or...overtime compensation, for or on account of any of the following activities ...
(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
(2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

<u>See</u> 29 U.S.C. § 254(a). The Portal Act amended the FLSA by defining certain activities as not constituting compensable work within the meaning of the FLSA. The purpose of the Portal Act was to narrow the definition of compensable work under the FLSA.[19] Accordingly, Congress intended to clearly define two types of non-compensable activity, i.e. commuting time and work which was preliminary or postliminary to the principal employment activity. An activity is considered "principal" if it is "'an integral and indispensable part of the principal activities for which [the employee is] employed'" and not specifically excluded by the Portal Act. <u>See</u> <u>IBP, Inc. v. Alvarez</u>, 546 U.S. 21, 30, (2005) (quoting <u>Steiner v. Mitchell</u>, 350 U.S. 247, 256 (1956)).[20]

Plaintiff contends that all of his Commute Time is compensable since once he performed principal activities at home or an activity "integral and indispensable" to a principal activity, then he was entitled to compensation for all the time that follows the activity, including his Commute Time. <u>See</u> Pl. Br. at 12. Contrary to plaintiff's arguments, the January 1999 opinion letter opined that the fact that

---

[19]Before the enactment of the Portal Act, Congress found "the [FLSA]...ha[d] been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creat[ing] wholly unexpected liabilities, immense in amount and retroactive in operation" and "that all of the foregoing constitutes a substantial burden on commerce and ...obstruction to the free flow of goods in commerce."29 U.S.C. § 251(a).

[20]In <u>Steiner</u>, the Supreme Court carved an exception to the Portal Act. Workers in a battery plant, using caustic and toxic materials, were compelled by health, hygiene and personal safety considerations to change their clothes before and after work and to shower in facilities which state law required the employer to provide. <u>See</u> <u>Steiner</u>, 350 U.S. at 248. Under the Portal Act, these activities were, without question, noncompensable because they constituted activity preliminary or postliminary to the principal activity. <u>See id.</u> at 249. However, the Supreme Court concluded that "activities performed either before or after the regular work shift, on or off the production line, are compensable" despite the Portal Act "if those activities are an integral and indispensable part of the principal activities...and are not specifically excluded by Section 4(a)(1)." <u>See id.</u> at 256 (referring to 29 U.S.C. §254(a)(1) which defines commuting time as noncompensable). Thus, the Supreme Court has stated an exception to the Portal Act. Preliminary and postliminary activities which are found to be an integral and indispensable part of the principal activities and which are not excluded explicitly by 29 U.S.C. §254(a)(1) are compensable under the Portal Act. This exception is very narrow.

the field employees received equipment at their home "completing service or time allocation reports, checking voice mail, and checking e-mail" did not make the home "a job site for purposes of counting work or travel." See 1999 DOLWH LEXIS 9, at *4. Further, the DOL determined that performing such work at home did not "affect the compensability of travel time" to different job locations. See id. at *5. This Court agrees with the DOL's rationale as well as the Second Circuit's reasoning in Reich v. New York City Transit Auth., 45 F.3d 646 (2d.Cir.1995).

In Reich, the Transit Authority ("TA") canine handlers sought FLSA overtime compensation for time spent commuting with their employer-assigned canines. In reversing the district court and denying plaintiffs' compensation claims, the court noted that plaintiffs merely rode to work with their dogs in the back seat. See id. at 652. This finding supported the conclusion that the Portal Act's travel exception, 29 U.S.C. §254(a)(1), rendered the bulk of plaintiffs' commutes non-compensable. See id. at 651-52. The court, however, ruled the Portal Act exception inapplicable to the actual dog-care work that plaintiffs performed while commuting. See id. at 652. Nonetheless, because plaintiffs devoted such little time to dog care while driving, the court concluded that these dog care services were non-compensable. See id. at 652-53. The fact that caring for the dogs was performed at home before traveling did not impact the Court's ruling that the commute time was not compensable, and judgment was entered in favor of the employer on the travel time portion of the employer's claim. See id. at 653; see also Buzek v. The Pepsi Bottling Group, Inc., 501

F.Supp.2d 876, 882 (S.D.Tx.2007) (an employee's commute from his last service call of the day to home where he transported tools, and submitted end of day reports from home were found to be incidental and not compensable under the Portal Act). Here, the types of duties performed by plaintiff at home, including communicating with managers, making reports and loading a limited amount of equipment into his car, are the types of "at home" duties that both the DOL and the courts have acknowledged are not compensable under plaintiff's commute time.[21]

Moreover, defendant, relying on Gorman v. Consolidated Edison Corp., 488 F.3d 586, 594 (2d Cir.2007), argues that the Second Circuit articulated a distinction between the terms "indispensable" and "integral." While "indispensable" means only "necessary," the term "integral" adds the requirement that the activity be "essential to completeness...organically linked...[or] composed of constituent parts making a whole." See id. at 592. Therefore, unless an activity is essential to complete the employee's task, it is excluded from compensation under the Act. See id.; see also IBP, 546 U.S. at 40-41 (unless an activity is both integral and indispensable to performing the job, it is not a principal activity of the job).

Here, it is undisputed that plaintiff's principal job duties as a Retail Specialist included making sure that Black & Decker products were properly stocked, priced and displayed within the space that plaintiff or defendant negotiated in each of his six assigned Home

_____

[21]Plaintiff has relied heavily on Clarke v. City of New York, 2008 WL 3398474 (S.D.N.Y.2008) in support of his contentions. See Pl. Br. at 13-16. However, the Clarke court granted the employer's motion for summary judgment on the issue of the inspectors' commute time when traveling by car. See id. at *11. In addition, the Court found that the time spent "plotting course to the first inspection site is not 'integral and indispensable' to work, since the commute to the first inspection site is not itself work." See id. at *9.

Depot stores. Moreover, there is no dispute that one of the essential functions of plaintiff's job was to ensure that his six Home Depot stores were "fundamentally sound."[22] Plaintiff asserts that several at-home tasks including reviewing and responding to company e-mails, receiving directives from their managers, printing and reviewing sales reports, and synchronizing the company-provided PDA were integral and indispensable to his job since such communications provide him with instructions for carrying out his work at the Home Depot stores. However, as in Gorman and IBP, none of the activities plaintiff performed at home were both "integral" and "indispensable" to him being able to ensure that defendant's products were properly stocked, priced and displayed or that one of his six assigned stores were "fundamentally sound." See Lemmon v. City of San Leandro, 538 F.Supp.2d 1200, 1209 (making commute time compensable merely because an employee performed any "principal activity" at home "would be a violation of the letter and spirit of the FLSA"). Accordingly, the tasks performed by plaintiff at home are not "principal activities," and even assuming they were, such tasks were not "integral" and "indispensable" that would render his entire Commute Time compensable under the FLSA. Thus, defendant's motion for partial summary judgment is granted.

## III. **Defendant's Good Faith**

Defendant asserts that it is entitled to a good faith defense under §10 of the Portal Act, 29 U.S.C. §259, which provides that "no

---

[22]As described in the factual background, "fundamentally sound" means plaintiff had to make sure that: (1) the Black & Decker products in the store are priced correctly; (2) the product fact tags are accurate and properly displayed; (3) the Black & Decker products are adequately stocked; and (4) the Black & Decker products are clean, on the shelves and on display, and (5) the Black & Decker tool display is set in the pod correctly.

employer shall be subject to any liability [under FLSA] if he pleads and proves that the act or omission complained of was in good faith and in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation [of the DOL] or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged." See 29 U.S.C. §259.[23] The Portal Act defense requires the employer to establish three interrelated elements: (1) that its action was taken in reliance on a ruling of the [DOL], (2) that it was in conformity with that ruling, and (3) that it was in good faith. See EEOC v. Home Ins. Co., 672 F.2d 252, 263 (2d Cir.1982); Quinn, 621 F.Supp. at 1089; see also 29 C.F.R. §§790.1-.22 (DOL interpretation of the Portal Act). The Portal Act defense was established to protect employers from liability if they took certain actions in reliance on an interpretation of the law by a government agency, even if that interpretation later turned out to be wrong. See Home Ins., 672 F.2d at 263.

Plaintiff contends that defendant has not shown "that its action was taken on reliance of the [DOL's] ruling and that the action was taken in good faith." See Pl. Br. at 21. In addition, plaintiff argues that defendant has not proven that the actions it took were in conformity with the DOL opinion letters it reviewed and considered. See id. at 22. However, "[t]he test of an employer's good faith in relying upon an administrative order is whether he acted as a reasonably prudent man would have acted under similar circumstances." See Kam Koon

---

[23] See Quinn v. New York State Elec. & Gas Corp., 621 F.Supp. 1086, 1089 (N.D.N.Y.1985) ("summary judgment has been found to be an appropriate tool to dispose of cases involving a Portal...Act defense").

<u>Wan v. E. E. Black, Limited</u>, 188 F.2d 558, 562 (9th Cir.), cert. denied 342 U.S. 826 (1951); 29 C.F.R. 790.15(a); <u>see</u> <u>also</u> <u>Marshall v. Baptist Hosp.</u>, 668 F.2d 234, 238 (6th Cir.1981) ("The language and legislative history of [the Portal] Act indicate that courts should be hesitant to impose retroactive...liability on employers in the face of an administrative interpretation which the employer could plausibly interpret as insulating him from liability").

Here, defendant developed and implemented Time Keeping Guidelines that instructed its employees how to record their travel time. In addition, defendant consulted with Labor Counsel for legal advice as to the proper compensation practice for Commute Time for field employees. Labor Counsel reviewed and relied upon the FLSA and its implementing regulations and DOL opinion letters, including the January 1999 opinion letter in providing advice to Black & Decker. The Court finds that Labor Counsel's advice that a practice that compensated employees for Commute Time to their first job site in excess of 60 miles and from their last job site to home in excess of 60 miles would be in compliance with applicable state and federal wage and hour laws, was rational. Accordingly, Black & Decker did not act in bad faith when it compensated its Retail Specialists in a manner that was based on the legal advise obtained from its Labor Counsel.[24] Thus, defendant's partial summary judgment motion on this issue is granted.

---

[24]Plaintiff has alternatively requested a continuance of the defendant's motion for partial summary judgment to conduct discovery on the issue of good faith compliance and defendant's good will pursuant to Federal Rules of Civil Procedure 56(f). However, as discussed above this request is denied. <u>See</u> Point I.B. Further, defendant has offered sufficient evidence concerning the development of its commute time policy including testimony from its Labor Counsel regarding the legal implications of the practice.

## IV.  **Statute of Limitations**

Defendant contends that a two-year statute of limitations should apply to the instant case, rather than the three-year limitations period because Black & Decker did not willfully violate the FLSA. See Def. Br. at 17. The FLSA provides for a two-year statute of limitations. See 29 U.S.C. § 255(a). This period may be extended to three years for "a cause of action arising out of a willful violation." See id.; see also Herman v. RSR Sec. Servs., Ltd., 172 F.3d 132, 141 (2d Cir.1999); Debejian v. Atlantic Testing Lab., Ltd., 64 F.Supp.2d 85, 92 (N.D.N.Y.1999); Bowrin v. Catholic Guardian Soc., 417 F.Supp.2d 449, 475 (S.D.N.Y.2006). In order to benefit from the three-year statute of limitations, plaintiff bears the burden of proving "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." See Herman, 172 F.3d at 141 (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988)); see also Reich v. Waldbaum, Inc., 52 F.3d 35, 39 (2d Cir.1995).[25]

Plaintiff has presented no evidence that defendant knew that it was violating the FLSA. nor Black & Decker recklessly disregarded its obligations under the statute. The evidence reveals that defendant contacted its Labor Counsel in developing its practice for compensating employees for Commute Time and that Labor Counsel reviewed and relied upon relevant legal authorities in advising defendant on its practices to ensure that its policies conformed to the requirements of the FLSA.

_____

[25]Indeed, an employer does not act willfully even if it acts unreasonably in determining whether it is in compliance with the FLSA. See Reich, 52 F.3d at 39.

As previously discussed at Point II.A. and B, Black & Decker did take sufficient steps to ensure compliance with the FLSA and DOL regulations and authorities including reviewing the January 1999 opinion letter and, thus, it cannot be said that defendant's conduct was in reckless disregard of FLSA requirements. Therefore, defendant motion for partial summary judgment is granted and the two year statute of limitations is applicable.

## CONCLUSION

For the reasons set forth above, defendant's motion for partial summary judgment is granted in its entirety pursuant to Federal Rule of Civil Procedure 56.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca<br>
MICHAEL A. TELESCA<br>
United States District Judge

Dated:     Rochester, New York
           May 18, 2009